PARDON ARMINGTON *vs.* JULIUS PALMER *et al.*

GARDNER C. SIMS *vs.* JULIUS PALMER *et al.*

PROVIDENCE—DECEMBER 28, 1898.

PRESENT: Stiness, Tillinghast, and Rogers, JJ.

(1)  *Corporations. Wrongful Assumption of Corporate Name. Injunction.*
            *Trade Mark.    Trade Name.*

A corporation can no more use its corporate name in violation of the rights of others than an individual can use his name, legally acquired, so as to mislead the public and injure another.

The principle adopted is similar to that of a trade name or trade mark, and is applied accordingly; a court of equity, therefore, has jurisdiction in such case without the intervention of the State.

A corporation restrained from using a name previously chosen by it may choose another name under Gen. Laws R. I. cap. 176, § 7.

The use of a trade name is in some respects different from that of a trade mark. The law of the latter is designed chiefly for the protection of the

public from imposition; that of a trade name for the protection of the party entitled to its use.

Although one may make and sell an unprotected article, he cannot simulate the name or product of another so as to trench upon the latter's rights or to mislead the public.

If such right be violated, it is not necessary to show actual damage, nor will the absence of fraudulent intent be a defence.

A right to use the name goes with the right to manufacture; but this applies only to the use of the name in connection with the article and not in connection with the name of the maker.

(2)  *Corporations.   Viva Voce Vote in Stockholders' Meeting.    Rights of Majority and Minority.*

Persons who had purchased the property of the A. & S. E. Co., a corporation, formed a new corporation, under the general laws, with the name of the A. & S. Co.   At a meeting of the stockholders of the A. & S. E. Co. (A. being absent and S. filing a written protest) a resolution was declared, by· a *vive voce* vote, to be passed, giving the A. & S. Co. the right to use the name it had chosen:—

*Held,* that this vote was of no effect; aside from the defect of record the act was done after the new company had been organized, and without consideration.   A majority cannot give away the rights of a minority.

BILL IN EQUITY for an injunction to restrain the use of a corporate name so like that belonging to the complainants as to mislead the public and injure the owners.   Heard on demurrer to the bill, and on bill and answer subject to the demurrer.

STINESS, J.   These bills set out that the complainants were formerly partners, under the name of Armington & Sims, in the manufacture of high speed engines, which were protected by patents.   In 1882 they procured an act of incorporation from the General Assembly of this State, as the Armington & Sims Company, and upon organization they conveyed to the corporation all the assets of the partnership, including the patents and good will.

In 1883 another act of incorporation was procured for the Armington & Sims Engine Company, to which the former corporation made a similar conveyance.   The latter corporation went on in business until August, 1896, when, becoming seriously involved, an agreement of six parts was entered into between the Armington & Sims Engine Company, a committee of the creditors of said corporation, creditors of

said corporation who were not holders of its stock, creditors of the corporation who were holders of stock, holders of a majority of the stock of the corporation, and Armington and Sims as individuals.   The indebtedness of the corporation was extended for the term of three years ; the sum of $35,000 was advanced by certain creditors for small bills and a working capital; the control of the business was given to the creditors' committee, to whom a majority of the stock was transferred, and they were to sell the property of the corporation to pay its indebtedness, upon request of a majority of the creditors other than stockholders of the company.

It was found to be impossible to carry on the business in that way, and upon request, as aforesaid, the property was sold at auction to the respondent Scott, who, with the respondents Palmer and Bushnell, organized, under the general laws of this State, a new corporation, with the name Armington and Sims Company.

A meeting of the Armington & Sims Steam Engine Company was called to ratify and confirm the use of the name Armington & Sims in the name of the new corporation, and at said meeting, by a *viva voce* vote, and against the written protest of the complainant Sims, a resolution, granting to the respondents the right to use the name Armington & Sims Company as the name of their corporation, was declared to be passed, said Armington not being present.

The respondents, under this name, are engaged in business to sell "Armington & Sims Engines" as "Armington & Sims Company successors to Armington & Sims Engine Company."

The complainants, individually and as stockholders in the last named company, claim that this is a wrongful and injurious use of their names, against which they pray for an injunction restraining the use of such corporate name, and for other relief.   The respondents demur to the bills, upon the ground that a suit for such an injunction cannot be maintained by private parties against a corporation organized under the laws of this State, but that suit must be brought by or in behalf of the State ; and also that no facts are set out which entitle the complainants to relief.

(1)    Upon the first ground of demurrer the question is whether a private party can maintain a bill against a corporation for the wrongful assumption of its name.   The respondents rely upon *Rice* v. *National Bank*, 126 Mass. 300; *Boston Rubber Shoe Co.* v. *Boston Rubber Co.*, 149 Mass. 436; *American Order of Scottish Clans* v. *Merrill*, 151 Mass. 558; and *Paulino* v. *Portuguese Beneficial Ass'n*, 18 R. I. 165.

The first of these cases was an information *quo warranto*, to exclude the respondents from exercising the franchise of being a corporation.   The court· held that such a bill must be filed by the State and not by private parties.   With this doctrine we need not disagree.   The second case was a petition for leave to file an information *quo warranto*, and to restrain the respondent from doing business under the name of the Boston Rubber Co., claiming that this was distinct from the franchise to be a corporation.   The statutes of Massachusetts, of 1870, provided that the name assumed in the agreement of association should not be changed but by act of the legislature, and also that the agreement was to be submitted· to a commissioner of corporations for his approval. The court held that, as it was within his discretion to refuse to approve it, the court could not exercise that discretion and the certificate was conclusive.   The court said that the statute was not intended to prevent the fraudulent use of trade names, but to prevent the identity· of corporate names.   The statute, like our own, required that the name should not be one in use by any existing corporation of the State.   The statutes of Massachusetts, Pub. Stat. cap. 186, § 17, provide for an application to the court in cases of private injury; but as the petitioner had acquiesced in the use of the name for ten ·years, without injury, the court held that it did not make out a case for injunction under the statute.   The third case is to the same effect that the approval by the insurance commissioner of the name adopted by a beneficial association is conclusive, in a private suit, of the right of the association to such corporate name.   Both of these latter cases so clearly rest upon the conclusiveness of the judgment of the commissioner that they are hardly in point in respect to our statute,

which has no such provision.    Judge Holmes, in *Am. Order Scottish Clans* v. *Merrill*, foresaw a case like this one, in saying :    " When there are no statute provisions as to the choice of names, and parties organize a corporation under general laws, it may be that they choose a name at their peril, and that, if they take one so like that of an existing corporation as to be misleading and thereby to injure its business, they may be enjoined, if there is no language in the statute to the contrary."

The possibility here suggested is fully sustained by many cases, among which are the following, some of which were cited by Judge Holmes :    *Putnam* v. *Sweet*, 1 Chand. (Wis.) 286; *Newby* v. *Oregon Cent. R'way*, Deady (U. S. Cir. Ct.), 609; *Holmes, Booth & Haydens* v. *The Holmes, Booth & Atwood Mfg. Co.*, 37 Conn. 278; *Farmers Loan & Trust Co.* v. *Farmers Loan & Trust Co. of Kansas*, 1 N. Y. Sup. 44; *Higgins Co.* v. *Higgins Soap Co.*, 144 N. Y. 462; *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.*, 32 Fed. Rep. 94; *R. W. Rogers Co.* v. *Wm. Rogers Mfg. Co.*, 17 C. C. A. 576, and note ; *Plant Seed Co.* v. *Michel Plant & Seed Co.*, 23 Mo. Ap. 579, affirmed 37 Mo. Ap. 313.

The principle upon which these cases rest is that, although a corporation may be legally created, it can no more use its corporate name in violation of the rights of others than an individual can use his name, legally acquired, so as to mislead the public and to injure another.    The principle adopted is similar to that of a trade name or trade mark, and is applied accordingly.    Consequently a Court of Equity has jurisdiction in such a case, without the intervention of the State.

The case of *Paulino* v. *Portuguese Association* is quite different from the case now before us.    In that case the complainants, a voluntary association, had appointed a committee to procure a charter, which was procured and under which the corporators had organized.    The bill sought to annul the charter because of alleged misconduct on the part of the corporators.    The court held that this could not be done.    Clearly the remedy of the complainants was of a

8

different sort. After referring to some of the cases cited above, the court used the language, herein quoted from the opinion of Judge Holmes, in *Am. Order Scottish Clans* v. *Merrill*, thus intimating the very right which is claimed in this case.

But the respondents argue, as was argued in the Massachusetts cases, that to restrain the use of the name is practically to annul the corporation, because it cannot act without a name. We do not think that this result follows. According to the allegations of the bill, the name assumed by the respondents is so like that of the older corporation as to be misleading and injurious. We see no reason why the corporation, if it is restrained from using its present name, may not, under Gen. Laws R. I. cap. 176, § 7, choose another name. That section, relating to an increase of the capital stock, says: "Such agreement may be amended in any other particular, excepting as provided in the following section," which relates to a decrease of the capital stock. The corporation, therefore, may still exist and enjoy its franchise, except in the wrongful use of its present name. This fact distinguishes the case from those in Massachusetts. Our opinion is that the bill states a case, and that the demurrer must be overruled.

Upon the merits, subject to the demurrer, the case is submitted on bill and answer. There is no dispute that the respondents have the right to make and sell the Armington & Sims engine, the only contention being that of the right to use the name of the former maker, The Armington & Sims Engine Company, which had become known and established, and to which the stock of the original Armington & Sims Co. had been surrendered and cancelled, and thus the original corporation has ceased to exist. Stated generally, the defence is that, having the right to make the engine, the respondents have the right to use the name, which, for this reason, cannot injure the complainants; that no fraud was intended in the choice of the name; and that authority was given by the vote above referred to for the use of the name by the respondents.

The use of a trade name is in some respects different from that of a trade mark. The latter usually relates chiefly to the thing sold; while, in addition to this, the former involves the source from which it comes, the individuality of the maker, both for protection in trade and for avoiding confusion in business affairs, as well as for securing to him the advantage of any good reputation which he may have gained. The law of trade mark is designed chiefly for the protection of the public from imposition; that of trade name for the protection of the party entitled to it. A case, therefore, in regard to trade name is of somewhat broader scope than one relating to a trade mark. It would be of little use to go over the numerous cases upon these subjects as they all agree in principle, however variant may have been its application. For this case it is enough to say that, although one may make and sell an unprotected article, he cannot simulate the name or product of another so as to trench upon the latter's rights or to mislead the public. Lord Langdale stated the rule very plainly in *Perry* v. *Truefitt*, 6 Beav. 66, cited in 2 Story's Eq. Jur. § 951, note, as follows: "The principle on which both the courts of law and equity proceed, in granting relief and protection in cases of this sort, is very well understood. A man is not to sell his own goods under the pretence that they are the goods of another man; he cannot be permitted to practice such a deception, nor to use the means which contribute to that end. He cannot, therefore, be allowed to use names, marks, letters or *indicia* by which he may induce purchasers to believe that the goods which he is selling are the manufacture of another person. . . . . . The case of *Millington* v. *Fox*, 3 M. & Cr. 338, seems to have gone this length, that the deception need not be intentional." Applying this principle to this case it is demonstrative. The name adopted by the respondents is so close a resemblance to that of the Armington and Sims Engine Company that there can be little doubt that it would be misleading and confusing in business matters, and the respondent advertises itself as the successor of said company. That company is still in existence. So far as appears it still has assets, because

its accounts, bills, and notes receivable were excepted from
the sale of its property.   As such corporation it has the right
to its name, free from simulative interference.   Some of the
cases cited by the respondents are of a different character.
They relate to the right to use the name which has become
descriptive of an *article*, e. g., "Singer," as applied to a
sewing machine ; *Singer Mfg. Co. v. Stanage*, 6 Fed. Rep.
279 ; *Singer Mfg. Co. v. Riley*, 11 Fed. Rep. 706 ; *Brill v.
Singer Mfg. Co.*, 41 O. St. 127 ; "Goodyear Rubber," *Good-
year Co. v. Goodyear Rubber Co.*, 128 U. S. 598.   In this
case, the decision is based upon the descriptive character of
the name, but the court suggests that, as the respondent was
the older company, if there was any exclusive right it would
be with that company rather than with the complainant.

Several of the cases cited support the complainants.   *Croft
v. Day*, 7 Beav. 84, enjoined the respondents from using their
own names against the right of a prior firm of Day & Mar-
tin.   *McLean v. Fleming*, 96 U. S. 245, held that the appel-
lant infringed a trade mark in using the name "Dr. McLane's
Liver Pills," and that proof of fraudulent intent is not re-
quired where infringement clearly appears.   *Frazer v. Frazer
Lubricator Co.*, 121 Ill. 147, where the appellant had sold
his right to his preparation known as "Frazer Axle Grease,"
with the right to use his name.   He afterwards undertook to
carry on business as S. Frazer & Co., but was enjoined.

But the respondents claim that The Armington & Sims
Engine Co. is not in business, and so no injury can follow.
As we have said, the company is still in existence, and may
be put on a footing for active business by a further contribu-
tion of capital, a thing which is often done.   It has the right
to its name, and if its right be violated it is not necessary to
show actual damage, nor will the absence of fraudulent in-
tent be a defence.   *Davis v. Kendall*, 2 R. I. 566.   This
disposes of the defence on the ground of innocent intent.

The third branch of the defence, the claim of authority,
cannot prevail.   The respondent did not acquire the right to
use the name by purchase.   They bought only the plant,
machinery, stock, and such visible property.   The purchase

of these does not carry the franchise or name of the corporation. Undoubtedly, as the respondents claim, the right to use the name goes with the right to manufacture, but this applies only to the use of the name in connection with the article, while the question here involved is the right to use the name of a maker, which stands upon a different ground.

(2) The vote of the corporation is of no effect. In the first place, the majority of the stock was held by the creditors' committee, who do not appear to have held that amount of interest in the corporation. But if they had, or if the creditors whom they represented desired them so to vote, aside from the defect of record by which it is claimed that the vote of a majority appears, it was done after the sale of the property and the organization of the new company, and without consideration. It was, therefore, a purely voluntary act. It was not referred to in the sexpartite agreement, which was the foundation of the whole matter. A majority cannot give away the rights of a minority.

We are, therefore, of opinion that the demurrer to the bill must be overruled, and that upon the showing of the bill and answer the complainants are entitled to relief.

*Amasa M. Eaton and Archibald C. Matteson*, for complainants.

*Richard B. Comstock and Rathbone Gardner*, for respondents.