PHILADELPHIA TRUST, SAFE DEPOSIT & INS. CO. v. PHILADELPHIA TRUST CO.

(Circuit Court, D. Delaware. June 6, 1903.)

No. 239.

**1. CORPORATION—NAME—SIMILARITY TO ONE IN USE—INJUNCTION.**

The corporate name of the complainant contained in its original charter April 15, 1869, was The Philadelphia Trust, Safe Deposit and Security Company of the City of Philadelphia. Subsequently by a supplement to its charter obtained March 10, 1871, its name was changed to The Philadelphia Trust, Safe Deposit and Insurance Company, and since that time, while using its legal corporate name in judicial proceedings and transactions of business, it has by usage become generally known and is commonly spoken of as "The Philadelphia Trust Company" or "Philadelphia Trust Company." It is engaged in a general trust business in Philadelphia, other parts of Pennsylvania, in New Jersey, Delaware, and other states or territories of the Union. The defendant became incorporated under the general incorporation law of Delaware (21 Del. Laws, p. 445, c. 273), July 19, 1902, having authority, among other things, to carry on a general trust business, not only in Delaware, but in any part of the world. Letters intended for the complainant have frequently been addressed to it as "The Philadelphia Trust Company" or "Philadelphia Trust Company." On these facts and the other circumstances disclosed in the case, *held*, that a preliminary injunction should issue restraining the defendant from the use of the name adopted by it.

**2. SAME—CERTIFICATE OF INCORPORATION.**

Under the general incorporation law of Delaware a certificate of incorporation must set forth "the name of the corporation, which shall be such as to distinguish it from any other corporation engaged in the same business, or promoting or carrying on the same objects or purposes in this state." This statutory requirement, neither in terms nor by fair implication, is restricted only to cases in which the name of the corporation created under it is distinguished from the merely legal name of the other corporation. The complainant, although its legal name is The Philadelphia Trust, Safe Deposit and Insurance Company, is known in Delaware and elsewhere as "The Philadelphia Trust Company." The incorporators of the defendant in adopting the latter name in the charter clothing the defendant with some of the powers exercised by the complainant in Delaware, acted in violation of the statute, and did not acquire the right to use the name of the defendant sought to be appropriated to the defendant.

**3. SAME.**

The name adopted by the defendant is precisely the name by which here and elsewhere the complainant is generally known, and was presumably known to the incorporators of the defendant when they obtained its charter. Many of the powers contained in the charters of the two corporations are substantially alike, if not in all instances expressed in ipsissimis verbis, and can be exercised in the same territory.

**4. SAME—MISLEADING PUBLIC.**

The use of the name, adopted by the defendant, in the exercise of powers common to the two corporations would be directly calculated to

¶ 1. Use of corporate and firm names as trade names, see notes to R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 17 C. C. A. 579; Kathreiner's Malkaffee Fabriken Mit Beschraenkter Haftung v. Pastor Kneipp Medicine Co., 27 C. C. A. 357.

See Corporations, vol. 12, Cent. Dig. § 137.

¶ 4. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

produce confusion in their business, mislead the public as to the identity of the company with which it may be intended to deal in the matter of trusts and administration of estates, and in other respects create uncertainty and mistake as to identity leading to consequences of the gravest character; and also to produce unfair competition in business.

5. SAME—SELECTION OF NAME.

Original incorporators under the general incorporation law of Delaware have no right to select a name either intended or directly calculated to work a wrong. The statutory authority and requirement to insert a corporate name in the certificate of incorporation were not intended to enable such incorporators by a choice of name to invade the legitimate rights of others. While the purpose of the law is to enable persons to acquire and enjoy a corporate franchise, it does not contemplate that the incorporators shall take advantage of its provisions to pursue such an injurious course of action as a court of equity would enjoin in the case of individuals.

6. SAME—SIMILARITY OF NAMES.

The difference between the corporate name of the complainant and that of the defendant consists in the omission from the latter of the words "Safe Deposit and Insurance." There can be no doubt that should the two names be placed side by side no one able to read would mistake the one for the other. But this can be said with respect to many names where infringement or violation has been found by the courts.

7. SAME.

The words "Philadelphia Trust" occur in both of the corporate names of corporations having to a large extent common powers. One of the most prominent of these powers is the right to carry on a general trust business. That such power is the most prominent is shown by the fact that the complainant has been generally known as "The Philadelphia Trust Company" or "Philadelphia Trust Company," instead of "The Philadelphia Safe Deposit Company" or "Philadelphia Safe Deposit Company," or "The Philadelphia Insurance Company" or "Philadelphia Insurance Company." This usage with respect to the name of the complainant is a fair indication that the words imitated by the defendant are so much of the complainant's name "as will mislead dealers into the belief that the corporations are the same."

(Syllabus by the Court.)

In Equity.

Benj. Nields and R. L. Ashurst, for complainant.

Herbert H. Ward and Andrew C. Gray, for defendant.

BRADFORD, District Judge. The Philadelphia Trust, Safe Deposit and Insurance Company, a corporation of Pennsylvania, the complainant, has brought its bill against the Philadelphia Trust Company, a corporation of Delaware, praying, in addition to the usual prayers, as follows:

"That the defendant, Philadelphia Trust Company, its officers, attorneys, servants and agents may be restrained by the injunction of this honorable court from acting as agent, trustee, receiver, executor, administrator or exercising any of the powers as expressed in its articles of incorporation under the name of Philadelphia Trust Company, and from engaging in or carrying on under said name any insurance, trust, safe deposit or security business whatsoever, or using the name of Philadelphia Trust Company in any of the cities, States or territories of the United States. And also that a preliminary injunction may issue to restrain the defendant, its officers, attorneys, servants and agents in like manner until the further order of this court."

A restraining order having been issued, the case is now before the court on a motion for a preliminary injunction as prayed. The

original charter of the complainant was obtained from the legislature of Pennsylvania, April 15, 1869, and thereafter two supplements to the charter were obtained from the legislature of that state, March 16, 1870, and March 10, 1871. The original corporate name of the complainant was The Philadelphia Trust, Safe Deposit and Insurance Company of the City of Philadelphia. By the supplement of March 10, 1871, the name of the complainant was changed to The Philadelphia Trust, Safe Deposit and Insurance Company. Under its charter as amended the complainant has, among other powers, the following:

"Power to receive and hold, on deposit and in trust, and as security, estate, real, personal and mixed, including notes, bonds and obligations, of States, companies, corporations and individuals, and the same to purchase, collect, adjust, settle, sell and dispose of, in any manner without proceeding in law or equity, and upon such terms as may be agreed upon between them and the parties contracting with them; and, also, * * *. to receive upon deposit, for safe keeping, money, jewelry, plate, stocks, deeds, bonds, and valuable property of every kind, upon terms to be prescribed by the By-laws of the corporation; provided, that nothing herein contained, shall authorize said Company to engage in the business of banking, * * * to make insurance for the fidelity of persons holding places of responsibility and trust. * * * That any executor, administrator, guardian or other trustee or public officer, having the custody or control of any bonds, stocks, securities, moneys or other valuables, belonging to others, shall be authorized to deposit the same for safe keeping with the said company."

By the supplement of March 16, 1870, the complainant received, among others, the following powers:

"That The Philadelphia Trust, Safe Deposit and Insurance Company of the City of Philadelphia be, and they are hereby authorized to accept and execute Trusts of any and every description which may be committed or transferred with their consent to them, by any person or persons whatever, bodies corporate or public, or by any Court of the United States, or of the Commonwealth of Pennsylvania; and to accept and execute the office and appointment of Executors or Administrators, of any kind and nature, whenever such office or appointment is conferred or made by any person or persons, or by any Register of Wills, or by any Orphans' or other Courts, either of the United States or of this Commonwealth; and that in all cases where application shall be made to any Court or Register of Wills of the Commonwealth of Pennsylvania, for the appointment of any Receivers, Trustees, Administrators, Assignees, Guardian of any Minor or Committee of a Lunatic, it shall and may be lawful for such court or Register, if they think proper, to appoint The Philadelphia Trust, Safe Deposit and Insurance Company of the City of Philadelphia, with their consent, such Receiver, Trustee, Administrator, Assignee, Guardian or Committee; and the accounts of said Company as such Receiver, Administrator, Executor, Trustee, Assignee, Guardian or Committee, shall be regularly settled and adjusted before the proper tribunal, and upon such settlement and adjustment, all proper, legal, usual and customary charges, costs and expenses shall be allowed to the said Company for their care and management of the trusts and estates aforesaid; and the said Company, as such Trustee or Assignee, Guardian, Receiver, Administrator, Executor or Committee, shall be subject to all orders or decrees made by the proper tribunal under the laws of the Commonwealth. * * * That the said Company shall be and hereby is authorized and empowered to enter security and become surety for any person or persons, for the faithful performance of any trust, office, duty, contract or agreement; and it is further authorized to become sole surety, in any and all cases where by law two or more sureties are required, for the faithful performance of any trust or office; and it shall and may be lawful for any court of this Commonwealth to approve said company as sole surety in all such cases, and in every such case the Capital Stock of the said Company shall be taken and considered as suffi-

cient security therefor, but in such case the officers and affairs of said Company shall be subject to examination, and its property and effects liable as aforesaid; and it shall be lawful for said Company to stipulate and provide for indemnity from the person or persons for whom it shall so become responsible, and to enforce any contract, pledge or other security made or given for that purpose as may be equitable and just."

The defendant obtained its charter under the general incorporation laws of Delaware (21 Del. Laws, p. 445, c. 273), July 19, 1902. There were only three incorporators, all of whom at the time of the incorporation were and still are residents of Wilmington, Delaware. The charter sets forth as follows:

"The nature of the business and the objects and purposes proposed to be transacted, promoted and carried on, are to do any or all of the things herein mentioned as fully and to the same extent as natural persons might or could do, and in any part of the world, but only when and as generally or specifically authorized from time to time, by the owners and holders of a majority of the shares of the capital stock of the corporation; which authority shall be evidenced in writing filed with the Secretary and recorded on the minutes of the proceedings both of the stockholders and directors of the corporation."

Among the corporate powers of the defendant are the following:

"To conduct business in any State, the District of Columbia, the territories and colonies of the United States and in foreign countries. To have offices and to carry on business without restriction as to place or amount. ☼ ☼ ☼ To exercise any trusts in regard to money, bonds, stocks, notes. contracts, choses in action, investments or interests of whatever kind or nature in any property, real, personal or mixed, and to receive compensation therefor and at such rate, in such form and on such terms and conditions as may be agreed on in the contract relating to such trusts. To act as the fiscal agent of any State, municipality, body politic, corporation, company or other party. To receive from any corporation or other party for investment, exchange or sale, any moneys, securities or property of any kind and to negotiate and effect loans thereon. To act as trustee under any mortgage, bond or contract made or issued by any municipality, body politic, corporation, company or other party. To accept from and execute trusts for married women, with respect to their separate property; and as their agent to manage any property or estate or transact any business in relation thereto. To act under the appointment of any Court of Record, or other authority competent to make such appointment as guardian, receiver, or trustee of the estate of any minor or other person, corporation or party. To be appointed and to accept the appointment as executor under the Last Will and Testament or administrator with or without the Will annexed, of the estate of any deceased person; and to be appointed and to act as the committee or trustee of the estate of any lunatic, idiot, imbecile or habitual drunkard. To take, accept and execute all such legal trusts, duties and powers in regard to the holding, management and disposition of any estate, real, personal or mixed and the rents and profits thereof or the sale thereof as may be confided to it by any Court of Record or by any person, corporation, municipality or other competent authority, and it shall be accountable to all parties in interest for the faithful discharge of every such trust, duty or power which it may so accept. To take, accept and execute all such trusts and powers of whatsoever nature or description as may be conferred upon or entrusted or committed to it by any person or persons, or any body politic, corporation, company or other authority by grant, assignment, transfer, devise, bequest or otherwise, or which may be entrusted or committed, or transferred to it, or vested in it by order of any Court of Record, Surrogate, or other competent authority or party. To transact a general Trust Company business, as trustee to make investments of money, or exchanges or purchases of property; to manage any investments or property, to collect interests, dividends, rents, profits or claims of any kind

whatsoever; to act as registrar of stocks, bonds, certificates and debentures; and as transfer agent thereof for corporations or companies, to act as the trustee for the holders of or otherwise, in relation to any bonds, stocks, debentures or interests issued or to be issued by any state, municipality, body politic, corporation, legal association, company or party; and generally to do any of the things usually pertaining to the business of trust companies, and each and everything which now is or may hereafter be permitted by law. It may issue its own obligations in such form, on such amount and subject to such conditions as may be generally or specifically authorized by the stockholders in accordance herewith. To do any or all of the things herein set forth to the same extent as natural persons might or could do and in any part of the world as principals, agents, contractors, trustees or otherwise."

It is further provided in the defendant's charter that the above enumerated powers are "to be exercised only as may be generally or specifically authorized, from time to time, by the owners and holders of a majority of the shares of its Capital Stock; which authority shall be evidenced in the manner hereinbefore prescribed," and that "its principal office and place of business in the State of Delaware is to be located in the City of Wilmington, State of Delaware," and, further, that "the Stockholders or Directors shall have power to hold their meetings and keep the books outside of the State of Delaware at such places as may be from time to time designated by them." The office and principal place of business of the complainant is in Philadelphia, Pennsylvania. It is averred in the bill, and not denied or disputed, as follows:

"Fifth. That your orator, since the said Sixteenth day of March, A. D. 1871, has been continuously and largely engaged in accepting and executing trusts committed and transferred to it by individuals, bodies corporate and by the several Federal and State Courts, and has during said time accepted and executed the offices of Executor and Administrator, and has acted as Receiver, Trustee, Assignee, Guardian of Minors, as a Committee of Lunatics and has entered security and became surety for sundry persons for the faithful performance of trusts, offices, duties, contracts and agreements, and has received large deposits of moneys and funds in the course of its dealing and business, and that the amount of moneys and trust funds received and held by it as aforesaid now amount to over fifty millions of dollars. That the business transactions and relations of your orator have been and now are with individuals and corporations in the said City of Philadelphia and elsewhere in the State of Pennsylvania, in New Jersey, Delaware and a number of the other States of the United States, as well as in the territories thereof."

The affidavits filed by the complainant in support of its motion were made by Samuel K. Smith, treasurer of the Harlan and Hollingsworth Company, of Delaware, James B. Clarkson, treasurer of Security Trust and Safe Deposit Company, of Delaware, John S. Rossell, trust officer of Security Trust and Safe Deposit Company, of Delaware, Anthony Higgins, of Delaware, William H. Jenks, a director of the Girard Trust Company, of Philadelphia, Henry B. Russell, assistant treasurer of the complainant, Edmund D. Scholey, secretary and treasurer of the complainant, William L. Du Bois, vice president of the complainant, and Francis B. Reeves, president of the Girard National Bank, of Philadelphia. All of these affiants aver in effect that the name by which the complainant is and has been generally known and commonly called is "The Philadelphia Trust Company" or "Philadelphia Trust Company." The affiant Russell further states that "a large proportion of the letters received by said complainant from its

customers and correspondents are addressed 'Philadelphia Trust Company' or 'The Philadelphia Trust Company,' * * * and that checks are frequently drawn payable to the order of complainant under the name of 'Philadelphia Trust Company' or 'The Philadelphia Trust Company.'" He also annexes to his affidavit eleven envelopes addressed either to "Philadelphia Trust Company" or "The Philadelphia Trust Company," one of them having been mailed at Lakewood, N. J., and states that all of them "were received by the complainant in the usual course of mail on the morning of the date hereof." He further states that in Philadelphia, "where complainant is located and in the several states where it transacts business it is generally known and commonly called 'The Philadelphia Trust Company.'" The affiant Du Bois states that the complainant "has been for more than thirty years last past, and now is, largely engaged in accepting and executing trusts and acting as agent, trustee, receiver, guardian, executor and administrator, and generally engaged in carrying on a trust, safe deposit and security business in the City of Philadelphia and elsewhere in the State of Pennsylvania; also in the States of New Jersey, Delaware and in a number of the other States of the United States; that complainant is generally known and commonly called 'The Philadelphia Trust Company' in the City of Philadelphia where it is located; and that complainant is invariably known as 'The Philadelphia Trust Company' in the States where it transacts its business. That complainant is a well established concern and under its said known trade-name, of 'The Philadelphia Trust Company,' has done and is doing a large and prosperous business; that the amount of money and trust funds received and held by said complainant, now amounts to several million dollars; that it has a valuable good-will resulting from many years of successful effort." The affiant Scholey makes like averments.

Against the case made by the complainant, the defendant has filed an affidavit made by its three original incorporators, in which, among other things, they aver as follows:

"That the said name 'Philadelphia Trust Company' was selected by said incorporators wholly without thought of or intent to copy after the name of 'The Philadelphia Trust, Safe Deposit and Insurance Company,' the above named complainant and wholly without thought of or intent to copy after any name by which the said complainant corporation may be or may have been commonly known. * * * That said company was not created or organized for the purpose of competing in any way or anywhere with the said complainant company. * * * That said defendant company was not created or organized with the intention to perform a general trust business or a business at all in competition with the said complainant or any other trust company. The primary object of said incorporation and organization was the creation of a company which would promote the organization of business corporations of any description, provide capital therefor, hold securities thereof, and promote the property and business success of such subsidiary and associated companies. That although said defendant company hath been fully organized preparatory to the undertaking its above outlined business, said company hath not, in fact, yet entered upon its said intended business, and hath not to any degree whatsoever competed with the business of said complainant. These deponents deny that it is the object and purpose of said defendant, under its said name of 'Philadelphia Trust Company,' * * * to engage in and carry on its said business otherwise than hereinabove set forth with individuals or corporations in the said City of Philadelphia or elsewhere in the State of Pennsylvania, or in the States of New Jersey, Delaware or

other states of the United States or its territories, but these deponents say that if and when it engages in the business hereinabove outlined it may be associated with or the promoter of any company or individual in any of the states of the Union with whom proper business arrangements can be made. But these deponents aver that its said business, so carried on as aforesaid, would not be greatly or otherwise to the prejudice or injury of said complainant. That the name of 'Philadelphia Trust Company' is not the legal name of said complainant, nor is it a name which said complainant hath the right to adopt as its legal name in the transaction of any business with any person with whom it may contract or have business relations. That the use of the legal name of said defendant corporation, properly adopted by it and conferred upon it under the provisions of the said General Corporation Law of the State of Delaware, is the legal right of said defendant corporation, under the provisions of said act. * * * And these deponents most positively aver that the adoption of said corporate title of 'Philadelphia Trust Company' was made with no intent to injure said complainant corporation or to deceive the customers thereof, or to interfere in any way with its business or to deceive the public who may have business relations with either said complainant or defendant corporation. And these deponents further deny that any act or transaction, either of themselves or of their fellow-stockholders in said defendant company, or the fellow-directors in said defendant company, or of said defendant company itself, hath resulted in any injury to said complainant corporation or in any interference with its said business or in any deception or misleading of its customers."

The affiants, however, do not deny that the complainant has been and is generally known as, and commonly called, "The Philadelphia Trust Company," or "Philadelphia Trust Company"; they do not deny that they, at the time of the incorporation of the defendant, had knowledge of that fact; nor do they deny that at that time they were ignorant of the nature of the business carried on by the complainant, nor that its business was transacted in Delaware and other states than Pennsylvania.

The vital question is whether a court of equity should, under the circumstances disclosed in the bill and affidavits, permit the defendant to use its adopted name in the transaction of its corporate business. The defendant, as before stated, was created under the general incorporation law of Delaware. By that act a certificate of incorporation must set forth "the name of the corporation, which shall be such as to distinguish it from any other corporation engaged in the same business, or promoting or carrying on the same objects or purposes in this state." It appears that the complainant has for years been and now is engaged in carrying on a general trust business in Delaware and elsewhere, and also that such business so carried on by the complainant in Delaware is of the same character as a portion of that which the defendant, under its charter, is authorized to conduct in the same state. It will be observed that under the statute the name of the corporation "shall be such as to distinguish it from any other corporation engaged," etc.; but the statutory requirement neither in terms nor by fair implication is restricted only to cases in which the name of the corporation created under it is distinguished from the merely legal name of the other corporation. While a corporation generally, if not invariably, is confined to the use of its corporate name in judicial proceedings and its transactions of business, it may by usage be generally and commonly called to the public by a different name. This may result from the length or complexity of its legal

name and consequent inconvenience in expressing it orally or in writing, or possibly from other causes. The complainant, although its legal name is "The Philadelphia Trust, Safe Deposit and Insurance Company" is known in Delaware and elsewhere as "The Philadelphia Trust Company," The incorporators of the defendant in adopting the latter name in a charter clothing the defendant with some of the powers exercised by the complainant in Delaware, acted in violation of the statute, and did not acquire the right to use the name sought to be appropriated to the defendant.

But, further, on the question of unfair competition in trade or business, it would be wholly immaterial, under the circumstances of this case, if the name adopted by the defendant were substantially unlike the legal name of the complainant. The name so adopted is precisely the name by which here and elsewhere the complainant is generally known, and was presumably known to the incorporators of the defendant when they obtained its charter. Many of the powers above cited from the charters of the two corporations are substantially alike, if not in all instances expressed in ipsissimis verbis, and can be exercised in the same territory. It is evident, from these circumstances, that the use of the name, adopted by the defendant, in the exercise of powers common to the two corporations would be directly calculated to produce confusion in their business, mislead the public as to the identity of the company with which it may be intended to deal in the matter of trusts and administration of estates, and in other respects create uncertainty or mistake as to identity, leading to consequences of the gravest character; and also to produce unfair competition in business. Attention was drawn during the argument to a distinction between the charters of the two corporations, and it was pointed out on the part of the defendant that, while the entering upon the exercise of its powers by the complainant was subject only to the action of its board of directors, such exercise in the case of the defendant is dependent upon general or specific authorization "from time to time, by the owners and holders of a majority of the shares of the capital stock of the corporation; which authority shall be evidenced in writing filed with the Secretary and recorded in the minutes of the proceedings both of the stockholders and directors of the Corporation." But this distinction between the charters of the two companies does not involve any difference between them with respect to corporate power. It involves only a difference in the corporate instrumentalities, procedure or machinery by which corporate power is to be exercised, and is unimportant to the decision of this case.

Original incorporators under a general incorporation law such as that of Delaware have no right to select a name either intended or directly calculated to work a wrong. The statutory authority and requirement to insert a corporate name in the certificate of incorporation were not intended to enable such incorporators by a choice of name to invade the legitimate rights of others. While the purpose of the law is to enable persons to acquire and enjoy a corporate franchise, it does not contemplate that the incorporators shall take advantage of its provisions to pursue such an injurious course of action as a court of equity would enjoin in the case of individuals. It is not essential

to the maintenance of this bill that the complainant should have an exclusive legal right to the name "The Philadelphia Trust Company" or "Philadelphia Trust Company." A case in point is Lee v. Haley, L. R. 5 Ch. App. Cases 154. Sir G. M. Giffard, L. J., in the course of the opinion of the court said:

"The facts are very simple, and the case depends upon principles which are well known, which this Court has asserted again and again, and which I trust it always will assert. The case is that the Plaintiffs have carried on business in Pall Mall for a series of years under the name of 'The Guinea Coal Company,' and there is evidence to show that they were well known, and that, as one would expect, they were frequently spoken of, as 'The Pall Mall Guinea Coal Company.' The Defendant, first of all, sets up as 'The Pall Mall Guinea Coal Company' in Beaufort Buildings. That was not found, and, indeed, was not calculated to induce persons to deal with him under the supposition that they were dealing with the Plaintiffs. All persons, of course, going to Beaufort Buildings would know perfectly well that they were not dealing with the persons carrying on their business in Pall Mall. He then proceeds to set up under the same name in Pall Mall, and that is the proceeding which is now complained of. It was urged on behalf of the Defendant that there are a number of other companies who call themselves Guinea Coal Companies, with some prefixes and others with no prefixes, and that for this, among other reasons, the Plaintiffs cannot have any property in the name of The Guinea Coal Company. I quite agree that they have no property in the name, but the principle upon which the cases on this subject proceed is, not that there is property in the word, but that it is a fraud on a person who has established a trade, and carries it on under a given name, that some other person shall assume the same name, or the same name with a slight alteration, in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name."

In Celluloid Manuf'g Co. v. Cellonite Manuf'g Co. (C. C.) 32 Fed. 94, 97, Mr. Justice Bradley said:

"Fair competition in business is legitimate, and promotes the public good; but an unfair appropriation of another's business, by using his name or trademark, or an imitation thereof calculated to deceive the public, or in any other way, is justly punishable by damages, and will be enjoined by a court of equity. * * * The fact that both are corporate names is of no consequence in this connection. They are the business names by which the parties are known, and are to be dealt with precisely as if they were the names of private firms or partnerships. The defendant's name was of its own choosing, and, if an unlawful imitation of the complainant's, is subject to the same rules of law as if it were the name of an unincorporated firm or company."

In Armington v. Palmer, 21 R. I. 109, 42 Atl. 308, 43 L. R. A. 95, 79 Am. St. Rep. 786, Judge Stiness, after referring to the authorities, said:

"The principles upon which these cases rest are that, although a corporation may be legally created, it can no more use its corporate name in violation of the rights of others than an individual can use his name, legally acquired, so as to mislead the public and to injure another. The principle adopted is similar to that of a trade-name or trade-mark, and is applied accordingly."

In Hendriks v. Montagu, L. R. 17 Ch. Div. 638, it was held, reversing the decision of the Master of the Rolls, that a company not registered under the Companies Act of 1862 can restrain the registration under that act of a projected new company which is intended to carry

on the same business as the unregistered company and to bear a name so similar to that of the unregistered company as to be calculated to deceive the public.  James, L. J., said:

"Many people do not care to bear in mind exactly the very letters of everything they have heard of, and we have had a great body of evidence before us of persons, whose business it is to be acquainted with these life assurance companies, all of whom concur in deposing in the strongest possible terms that nothing is more calculated to injure an old society of this kind than having a new society established which has got a name so similar to that of the other as that it is likely to be mistaken for it.  They say that likelihood exists in this case; that it is likely, morally certain, in fact, that there will follow the results which they describe.  Well, that being so, it seems to me we have everything that is required according to the principles of the Court—all the Court requires is to be satisfied that the names are so similar as to be calculated to produce confusion between the two companies—so calculated to do it that when it is drawn to the attention of those adopting the name complained of that that would be the result, it is not honest for them to persevere in their intention, though originally the intention might not have been otherwise than honest.  * * *  Then it is said that the Court has no right to restrain them from registering the company under this name; that there is a statutory right in any of Her Majesty's subjects to form a joint stock company, and register themselves in any name they think fit.  So far as the Registrar is concerned they have a right possibly to go to him and say, 'Register this company subject to the statutory provision as to similarity of name with that of any other registered company'; but that has nothing to do with the jurisdiction of the High Court to say, 'Yes, but you must not do mischief to anybody else.'  Supposing they had registered in the very name of an existing company, they might say, 'We were entitled to do that because we have not registered for the purpose of carrying on the same business, although we have registered in your very name.'  Then the same thing must apply conversely, and if the new name is so like the other name as to be calculated to deceive, the Court will say they ought not to be allowed to carry on a similar business, and will restrain them from doing so."

Brett, L. J., said:

"It seems to me it is not at all necessary, according to the authorities and according to the doctrines of the Court, to suppose there was any intention of fraud existing, or that there would be any in the future.  The question is simply whether the name they have adopted for a business of the same kind and in the same city is so like the name of the plaintiffs, which they have used as their trade name for so long a period, as in fact to enable the defendants to appropriate, or to result in the defendants in fact appropriating, a material part of the business of the plaintiffs' company, by misleading people to suppose that they were dealing with the plaintiffs when, in fact, they were dealing with the defendants.  * * *  Before the Master of the Rolls, it seems to me, that the evidence was rather feeble; there was some evidence before him, but it was feeble; but since then further affidavits by a number of experienced people have been filed.  I will call them people experienced in this kind of business, and they have all deposed that the similarity of these two business names is so great that the use of this new name would have the effect of misleading people into supposing, when they were in truth dealing with the defendants, that they were dealing with the plaintiffs,—of inducing them to deal with the defendants, although their desire and wish was to have dealt with the plaintiffs on account of the character which had been acquired by their name.  That evidence was put in upon affidavits filed, and was called to the defendants' attention a long time ago, but from reasons of their own they have wholly abstained from answering it. That evidence seems to me to be satisfactory evidence of the fact, and therefore I think we ought to come to the conclusion, as I do as a matter of fact, that the similarity of the names would in truth have that effect.  That seems to me all that it is necessary to decide."

Cotton, L. J., said:

"If the Court is satisfied that the Defendants intend to do acts which, as far as all reasonable probability goes, will interfere with the rights which the Plaintiffs have, then, in my opinion, it was the old established practice of the Court of Equity, and is the duty of the Court now, not to wait until injury is done, when a Court of Law would have granted damages, but to interfere by way of prevention and stop that from being done which, if done, would be an injury to the plaintiffs. * * * What is the result upon the evidence? In my opinion the result is this: That what the Defendants will do, if they are not restrained, will cause confusion and will induce people, or be the means of inducing people, who desire to insure in this long-established society of the Plaintiffs' to insure in the Defendants' office instead. * * * I will say one word further as to the intent of the Defendants. In my opinion it is not necessary that in taking the name they have, there should have been any fraudulent intent; but whether there was a fraudulent intent or not, everybody is responsible for the reasonable consequences, upon facts known to him, of what he is doing. * * * It is said there is a statutory right to register. Yes, there is a statutory right, providing the person who is doing it is not in doing it violating some other right, or offending against the law."

It is difficult, if not impossible, to reconcile the selection by the defendant of its corporate name with the bona fides it owed to the complainant and the public. That name is, save for the presence or absence of the prefix "The," identical with the name by which the complainant has been and is generally known and commonly called, and this fact was presumably known to the incorporators of the defendant in view of the defendant's omission to deny it after its attention had been drawn to the matter by the bill and supporting affidavits. Why did the incorporators of the defendant adopt "Philadelphia" as part of its name, instead of the name of some city or town in Delaware?. It is a Delaware corporation with its principal place of business in Wilmington. But it is evident that the sphere of its operations was not intended to be confined to Delaware, for, as before stated, its stockholders and directors "shall have power to hold their meetings and keep the books outside of the State of Delaware at such places as may be from time to time designated by them," and, further, the defendant can carry on its business "as fully and to the same extent as natural persons might or could do, and in any part of the world." A number of powers are common to both corporations, but it is immaterial that each corporation possesses some powers not common to both. This circumstance cannot obviate confusion of identity, or prevent deception of the public with respect to the exercise of powers common to both corporations. Incorporators as well as other persons, whatever may have been in fact their intent, are responsible for injury received as the natural and probable consequence of their own acts. The conclusion is almost irresistible that the selection of the name of the defendant was unjust and inequitable, in that it was intended that the defendant should unfairly take advantage of the credit, good name, reputation and business standing of the complainant, as an old and successful corporation, to the prejudice of the complainant and in fraud of the public.

There is another point which, though not necessary to the decision of this motion, may here be adverted to. The difference between the corporate name of the complainant and that of the defendant consists

in the omission from the latter of the words "Safe Deposit and Insurance." There can be no doubt that should the two names be placed side by side, no one able to read would mistake the one for the other. But this can be said with respect to many names where infringement or violation has been found by the courts. In Holmes, Booth & Haydens v. Holmes, Booth & Atwood Manuf. Co., 37 Conn. 278, 293, 9 Am. Rep. 324, Judge Carpenter well said:

> "There can be no distinction in principle between taking the entire name and so much of it as will mislead dealers into the belief that the two corporations are the same. The mischief in both cases is of precisely the same character, differing only in degree."

The words "Philadelphia Trust" occur in both of the corporate names of corporations having to a large extent common powers. One of the most prominent of these powers is the right to carry on a general trust business. If such power were not the most prominent, why should the complainant have been generally known as "The Philadelphia Trust Company" or "Philadelphia Trust Company," instead of "The Philadelphia Safe Deposit Company" or "Philadelphia Safe Deposit Company," or "The Philadelphia Insurance Company" or "Philadelphia Insurance Company"? The fact, however, remains that the complainant is generally known and commonly called either "The Philadelphia Trust Company" or "Philadelphia Trust Company." This usage is a fair indication that the words imitated by the defendant are so much of the complainant's name "as will mislead dealers into the belief that the two corporations are the same." Further, some of the affiants aver that "the corporate name of said respondent is, in the judgment of said deponent, similar to the corporate name of said complainant and is identical with the name by which complainant is generally known and commonly called wherever it transacts its said business; that the similarity of the respondent's name with that of the complainant's is calculated to deceive and mislead, and will mislead, the customers of complainant greatly, in the opinion of deponent, to the injury of said complainant." The bill avers that "it is the object and purpose of said defendant under its said name of Philadelphia Trust Company, unless restrained by this honorable court, to engage in and carry on its said business with individuals and corporations in said city of Philadelphia and elsewhere in the State of Pennsylvania, also in the States of New Jersey, Delaware and other States of the United States, as well as in the territories thereof, greatly to the prejudice and injury of your orator." The affiants on behalf of the defendant aver that, aside from its more especial objects and powers, "all other objects, purposes and powers set forth in said Certificate of Incorporation originally were and now are intended to be used and employed by said Company solely in the furtherance and promotion of the general and specific objects and powers of said corporation hereinabove quoted and set forth." But among the "other objects, purposes and powers" here referred to is the right to transact a "general Trust Company business," as hereinabove set forth in the citations from the charters of the two corporations. That such general trust company business may be in furtherance of certain specific ob-

jects and powers of the defendant is immaterial, so far as the awarding of a preliminary injunction is concerned.

It is contended on the part of the defendant that it cannot rightfully be deprived of the use of its legal name. But this contention, under the circumstances disclosed in the case, cannot be sustained. In Armington v. Palmer, supra, the court said:

"But the respondents argue, as was argued in the Massachusetts cases, that to restrain the use of the name is practically to annul the corporation, because it cannot act without a name. We do not think that this result follows. * * * We see no reason why the corporation, if it is restrained from using its present name, may not, under Gen. Laws R. I. 1896, c. 176, § 7, choose another name. That section, relating to an increase of the capital stock, says: 'Such agreement may be amended in any other particular, excepting as provided in the following section,' which relates to a decrease of the capital stock. The corporation, therefore, may still exist and enjoy the franchise, except in the wrongful use of its present name. This fact distinguishes the case from those in Massachusetts."

The right to change the name of a corporation created under the general incorporation law of Delaware (21 Del. Laws, p. 501, c. 273) is expressly conferred by the statute; section 135 providing that "every corporation organized under this act may * * * change its name" in the manner therein specified. A change of name requires little time and such a small expenditure as hardly to be considered onerous to the defendant. A proper change of name pursuant to the statute would remove all cause of controversy between the parties. My conclusion is that a preliminary injunction must issue as prayed, the costs to abide the result of the suit.